UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| SHAUN M. KOLAR, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:14-cv-00503-JTN-PJG |
| v. ) | |
| ) | Honorable Janet T. Neff |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| ) | |

      This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On September 25, 2011, plaintiff filed his applications for DIB and SSI benefits. Plaintiff alleged a December 24, 2009, onset of disability.[1] (Page ID 188,194). Plaintiff amended his claims to allege a June 1, 2010, onset of disability. (Page ID 62, 80). Plaintiff's claims were denied on initial review. (Page ID 120-37). On November 7, 2012, he received a hearing before an ALJ. (Page ID 75-116). On December 14, 2012, the ALJ issued his decision finding that plaintiff was not disabled. (Page ID 60-70). On January 29, 2014, the Appeals Council denied review (Page ID 37-39), and the ALJ's decision became the Commissioner's final decision.

---

      [1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Accordingly, October 2011, is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ failed to give proper weight to a treating source.

2. The ALJ made an erroneous credibility assessment.

(Plf. Brief at 6, docket # 12, Page ID 408). I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court

interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from June 1, 2010, through the date of the ALJ's decision. (Op. at 3, Page ID 62). Plaintiff had not engaged in substantial gainful activity on or after June 1, 2010, his amended alleged onset of disability date. (*Id.*). Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, status post laminectomy/discectomy/fusion on March 28, 2011; and psoriasis." (*Id.* at 4, Page ID 63). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of a listed impairment. (*Id.* at 7, Page ID 66). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light exertional work activities as defined in 20 CFR 404.1567(b) and 416.967(b). In a potential work setting the claimant can maximally lift weights of 20 pounds and repetitively lift and carry weights of 10 pounds or less. The claimant can stand and walk 4 of 8 hours and sit 6 of 8 hours in an 8-hour workday. The claimant requires an occasional

>sit/stand option.  The claimant can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  The claimant can perform frequent, but not constant, handling, fingering, and feeling.  The claimant must avoid exposure to vibrations.

(Op. at 7, Page ID 66).  The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible.  (*Id.* at 7-8, Page ID 66-67).  Plaintiff was unable to perform any past relevant work.  (*Id.* at 9, Page ID 68).  Plaintiff was 50 years old as of the date of his amended alleged onset of disability and 53 years old on the date of the ALJ's decision.  Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a an individual closely approaching advanced age.  (*Id.*).  Plaintiff has a high school education and is able to communicate in English.  (*Id.*).  The ALJ found that the transferability of jobs skills was not material to a determination of disability.  (*Id.*).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 7,200 jobs in the local economy that the hypothetical person would be capable of performing.  (Page ID 111-13).  The ALJ found that this constituted a significant number of jobs.  Using Rule 202.14 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.[2]  (Op. at 9-11, Page ID 68-70).

---

[2] Plaintiff has a history of substance abuse.  Since 1996, the Social Security Act, as amended, has precluded awards of DIB and SSI benefits based upon alcoholism and drug addiction. See 42 U .S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004).  The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to his disability.  *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989–90 (6th Cir. 2004).  Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.  *See Gayheart v. Commissioner*, 710 F.3d at 380.

**1.**

Plaintiff argues that the ALJ failed to give proper weight to a treating source. (Plf. Brief at 7-10, Page ID 409-12; Reply Brief at 1-2, Page ID 441-42). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. See 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[3] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other

---

[3] "We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Blankenship v. Commissioner*, No. 14-cv-2464, __ F. App'x __, 2015 WL 5040223, at * 9 (6th Cir. Aug. 26, 2015).

substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

June 1, 2010, is plaintiff's amended alleged onset of disability date. (Page ID 62, 80). Plaintiff presented very little medical evidence in support of his claims for DIB and SSI benefits. (Page ID 282-396). On July 26, 2010, plaintiff complained to his family physician, Rommel Aquino, M.D., that he was experiencing back pain. Plaintiff reported that he had "[n]o history of illicit drug use." (Page ID 319). His gait was intact and his posture was normal. His extremities were within normal limits. Plaintiff received prescriptions for Vicodin and Diazepam. (Page ID 319-20). Plaintiff's urine sample taken on July 26, 2010, tested positive for cocaine metabolite. (Page ID 340).

On August 6, 2010, Dr. Aquino found that plaintiff appeared his stated age, had normal body habitus, was well nourished and developmentally normal. He was not in any acute distress. He was oriented to person, place, and time and his mood and affect were appropriate. Dr. Aquino provided counseling regarding prescription, nonprescription, and illicit drug use and abuse. (Page ID 317-18).

On January 5, 2011, plaintiff was examined by Lisa Guyot, M.D., a board certified neurosurgeon. (Page ID 296-99). Plaintiff indicated that he had a gradual worsening of lower back burning and achiness over several years. He stated that these symptoms became significantly worse

in June of 2010.  (Page ID 296).  Plaintiff reported that he had smoked approximately 3 to 6 cigarettes per day and indicated that he had done so for 40 years.  He denied any alcohol use and any illicit or recreational drug use.  (Page ID 297).  His straight leg tests were positive.  The MRI of plaintiff's lower lumbar spine indicated problems that could warrant surgical intervention if a course of physical therapy failed to relieve plaintiff's back discomfort.  (Page ID 298-99).

On March 28, 2011, Dr. Guyot performed a "L4 through S1 minimally invasive fusion." (Page ID 290; *see also* Page ID 91-92, 285-86, 300-01).  Plaintiff's postoperative recovery was unremarkable.  (Page ID 292-94).  On July 5, 2011, plaintiff returned to his treating surgeon for a follow-up examination.  Plaintiff reported that his condition had improved since surgery.  Dr. Guyot found that plaintiff was alert and oriented in all three spheres.  His gait was steady and his range of motion had improved.  (Page ID 290).  There is no evidence in this record of any long-term functional restrictions imposed by plaintiff's treating surgeon.

On October 31, 2011, Dr. Aquino began treating plaintiff's hypertension.  Plaintiff continued to smoke cigarettes.  (Page ID 314-16).

On January 17, 2012, plaintiff was examined by Samiullah Sayyid, M.D.  (Page ID 343-49). Plaintiff reported a history of 3 minor whiplash injuries stemming from car accidents in the 1980s. (Page ID 343).  Plaintiff told Dr. Sayyid that he smoked a pack of cigarettes per day.  Plaintiff maintained normal dexterity and grip strength in both upper extremities.  His stance, posture, and ambulation were normal.  He did not use any ambulatory aid.  He was able to get on and off the examination table without difficulty.  (Page ID 344).

On February 28, 2012, plaintiff told Dr. Aquino that he did not suffer any side effects from medication.  (Page ID 364).  Dr. Aquino noted that plaintiff was "unable to give urine sample for

drug screen." Further, he noted that plaintiff's most recent urine test had been positive for cocaine use. Accordingly, Dr. Aquino declined to provide plaintiff with prescriptions for any narcotic medications. (Page ID 365). On March 12, 2012, plaintiff reported that 5 days earlier he fell and landed on his left side. He complained of an aching and a decreased range of motion. In light of plaintiff's substance abuse, Dr. Aquino again refused to provide him with any narcotic medications. (Page ID 361-63).

On March 26, 2012, plaintiff reported to Dr. Aquino that he "uses" illicit drugs. (Page ID 366). He denied any current cocaine use. He claimed a "one-time" cocaine use. (*Id.*). Plaintiff continued to smoke cigarettes. (Page ID 367). Plaintiff reported increased nervousness, but he had no depressive symptoms and was not suicidal. (Page ID 367). He was not in any acute distress. His gait was intact and he displayed normal station and posture. He had normal movement in all extremities. His motor strength was normal. His mood was normal and he was oriented in all three spheres. (Page ID 368).

Plaintiff testified that he had a history of cocaine dependence which began when he was in his "30's." (Page ID 94). He testified that he had recently been using cocaine at three bachelor parties, the most recent of which had been in August 2012. (Page ID 94-96). Plaintiff gave the following responses when the ALJ attempted to ask him follow-up questions concerning his substance abuse:

    Q    Okay. And you used cocaine at all three?

    A    Yes.

    Q    Okay. And did you go through a substance abuse program?

    A    No.

> Q	And how did you stop using cocaine? It's normally considered addictive.
>
> A	I grew up. Outgrew it.
>
> Q	Well, we're only talking like, two and a half months ago, so, I don't see you moving at this point from being a young adult to a mature adult. Do you have any other explanation?
>
> A	No, not really.
>
> Q	Okay. And do you have a history of alcohol abuse.
>
> A	No.

(Page ID 95-96). Plaintiff denied abusing any substance other than cocaine. (Page ID, 96). However, during subsequent questioning by the ALJ regarding his driver's license, plaintiff was forced to admit that his driver's license had been suspended in the 1980's for "drunk driving." (Page ID 103). Plaintiff persisted in his denial of having any problem with alcohol abuse:

> Q	Why was it suspended?
>
> A	Drunk driving.
>
> Q	At what time did you have a problem with alcohol abuse?
>
> A	I really didn't have a problem. I just happened to be over-intoxicated that night.

(Page ID 103).

Plaintiff testified that he moved to Grand Rapids from Flint on an unspecified date sometime after his use of cocaine in Brighton in August 2012, but before October 1, 2012. (Page ID 100). On October 1, 2012, plaintiff drove back to the Flint area from Grand Rapids to have Dr. Aquino fill

out a questionnaire for his attorney.[4]  (Page ID 100, 357).  On October 1, 2012, Dr. Aquino completed the "Physical Residual Functional Capacity Questionnaire." (Page ID 393-96). The ALJ found that the extreme restrictions that Dr. Aquino suggested were not well supported by objective medical evidence and were not consistent with his own treatment records and other substantial evidence in the record:

> Rommel Aquino, M.D., the claimant's primary care physician, completed a physical residual functional capacity questionnaire dated October 1, 2012. Dr. Aquino had treated the claimant since 2002 for a diagnosis of lumbar disc degeneration. His prognosis was fair. The claimant complained of lumbar back pain, leg and toe numbness, and difficulty with ambulation and balance. Walking worsened his pain. Anxiety contributed to the claimant's symptoms. The claimant's experience of pain or other symptoms was constantly severe enough to interfere with the attention and concentration needed to perform even simple work tasks. The claimant was incapable of even "low stress" jobs due to family issues, impaired activities of daily living, severe anxiety, and drug effects. The claimant could walk 1 block. He could sit for 20 minutes and stand for 15 minutes at one time. He could sit and stand/walk for less than 2 hours total in an 8-hour workday. The claimant needed to walk for 15 minutes after 5 minutes of sitting during an 8-hour workday. He needed a job that would permit shifting positions at will from sitting, standing, or walking. The claimant would have to take unscheduled breaks of 15 to 45 minutes every hour during an 8-hour workday. He occasionally needed to use a cane or other assistive device. The claimant could lift 10 pounds frequently and 20 pounds occasionally. He could never twist, stoop, bend, crouch, squat, or climb ladders or stairs. Dr. Aquino concluded that the claimant would miss more than 4 days per month of work as a result of his impairments or treatment (Exhibit 9F).
>
> The undersigned assigns little weight to the opinion of Dr. Aquino found in Exhibit 9F, as it is inconsistent with the medical evidence of record, particularly the physician's own treatment notes. There is no indication in Dr. Aquino's own

---

[4]On the present record, the ALJ could have found, but did not find, that Dr. Aquino's treating physician relationship with plaintiff ended on or about April 18, 2012. (Page ID 360). Plaintiff filed only the first page of the two-page progress notes for April 18, 2012. (*Id.*). The page that was provided states that plaintiff "Missed his Rehab consult." (*Id.*). By October 1, 2012, approximately six months had passed between visits with Dr. Aquino and plaintiff had moved to Grand Rapids. Further, the progress notes from the October 1, 2012, visit show that Dr. Aquino did not envision any ongoing treating physician relationship: "Patient will be transferring to [G]rand Rapids. Will forward records to [his] new physician." (Page ID 359).

>  treatment notes or the remainder of the medical evidence of record that the claimant had any difficulty with ambulation or balance. While Dr. Aquino noted that the claimant displayed symptoms of anxiety, the claimant did not complain of severe mental symptoms nor did he seek any mental health treatment. The claimant made no indications that his activities of daily living were affected by his level of pain. In fact, the claimant testified that he has been able to drive long distances, traveling to Brighton on 3 occasions to attend bachelor parties and visiting the Flint area after moving to the Grand Rapids area. There is no indication in the medical evidence of record that the claimant would need to use a cane or other assistive device for ambulation.

(Op. at 5, Page ID 64).

Aquino's predictions of how often plaintiff would likely miss work was conjecture, not a medical opinion. *See Murray v. Commissioner*, 1:10-cv-297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Further, the issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Allen v. Commissioner*, 561 F.3d at 652. If a treating physician "submits an opinion on an issue reserved to the Commissioner – such as whether the claimant is disabled, or unable to work, the claimant's RFC, or the application of vocational factors – his decision need only 'explain the consideration given to the treating sources opinion.' The opinion, however, 'is not entitled to any particular weight.' " *Curler v. Commissioner*, 561 F. App'x 464, 471 (6th Cir. 2014) (quoting *Johnson v. Commissioner*, 535 F. App'x 498, 505 (6th Cir. 2013) and *Turner v. Commissioner*, 381 F. App'x 488, 493 (6th Cir. 2010)).

Here, the ALJ gave a more than adequate explanation of his consideration of Dr. Aquino's statement and gave good reasons why he found that the opinions expressed therein were entitled to little weight. Aquino's opinions were inconsistent with his own treatment notes and were based on his assigning full credibility to his patient's subjective complaints rather than objective test results. (*Id.*). The ALJ is responsible for making the factual finding regarding the claimant's credibility, not the treating physician. *See Allen v. Commissioner*, 561 F.3d at 652; *see also Ferguson v.*

*Commissioner*, 628 F.3d 269, 274 (6th Cir. 2010); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) ("[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ."). I find no violation of the treating physician rule.

**2.**

Plaintiff argues that the ALJ made an erroneous credibility assessment. (Plf. Brief at 10-14, Page ID 412-16; Reply Brief at 2-5, Page ID 442-45). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The Court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005) (The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . .").

The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.'"). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476; *see*

*Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

I find that the ALJs factual finding regarding plaintiff's credibility is supported by substantial evidence. The ALJ carefully considered the plaintiff's testimony regarding his subjective symptoms. (Op. at 8, Page ID 67). The ALJ found that this medical record provided little support for plaintiff's allegations regarding the limiting effects of his impairments. (*Id.*). Earlier in his opinion, the ALJ noted that despite plaintiff's complaints of symptoms of anxiety, plaintiff did not seek mental health treatment and he had not been diagnosed with any mental impairments. (Op. at 7, Page ID 66). Plaintiff received routine medical care for treatment of psoriasis and he was prescribed cream for treatment of flare-ups. (*Id.* at 5, Page ID 64). Plaintiff had tested positive for cocaine use after telling his physician that he did not use illegal drugs. (*Id.* at 4, Page ID 63). Plaintiff testified at the hearing that he had a history of cocaine dependence (Page ID 95), yet reported to his primary care physician in March 2012 that he had used cocaine on only one occasion. (Op. at 6, Page ID 65; *see* Page ID 366). Plaintiff testified that he had attended three bachelor parties in Brighton, Michigan, the most recent in August 2012, and that he had used cocaine at all three parties. (Op. at 6, Page ID 65; *see* Page ID 94-95, 97). Plaintiff's primary care physician

routinely refused to prescribe the [plaintiff] narcotic pain medication for his complaints of chronic back pain absent a negative drug screen. (Op. at 6, Page ID 65).

The ALJ found that other evidence further undermined plaintiff's testimony regarding his subjective limitations:

> The claimant sought only sporadic treatment for his complaints of back pain following surgery. The claimant moved to Grand Rapids in September 2012. Despite his testimony that he needs to sit in a recliner with his legs elevated for most of the day, the claimant has been able to drive approximately 90 miles from Grand Rapids to Flint to continue treatment with Dr. Aquino in Flint. The claimant testified that he is independent in his personal care. He also cares for 2 young children. He occasionally helps with cooking and household chores. The claimant is able to grocery shop. The claimant testified that he takes Valium for symptoms of anxiety. However, he has not sought any mental health treatment despite these complaints. The claimant's lack of treatment indicates that the claimant's symptoms might not be as debilitating as he suggests. The claimant's allegations regarding his physical deficits are inconsistent with the evidence of record and not wholly credible.

(Op. at 8, Page ID 67).

Plaintiff argues that the ALJ's observation that plaintiff sought only "sporadic" treatment for back pain was not accurate given that plaintiff saw Dr. Guyot for three follow-up examinations in 2011, one examination by Dr. Aquino in 2011, and six visits with Aquino in 2012. (Plf. Brief at 11, Page ID 413). Given the level of pain and functional limitations that plaintiff claimed in his hearing testimony (Page ID 105-09), it was reasonable for the ALJ to describe the occasions plaintiff sought medical treatment as sporadic. Further, the ALJ's finding that plaintiff's sporadic visits undercut his claims of disabling functional limitations was appropriate. *See Strong v. Social Security Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004); *see also Walters v. Commissioner*, No. 1:14-cv-481, 2015 WL 1851451, at * 14 (S.D. Ohio Apr. 22, 2015); *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements,* SSR 96-7p (reprinted at 1996 WL 374186, at * 7) (SSA July 2, 1996) ("[T]he individual's

statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]").

     Plaintiff argues that the ALJ made too much of the evidence that he was able to drive long distances on multiple occasions. (Plf. Brief at 12, Page ID 414; Reply Brief at 3, Page ID 433). The Court does not make its own credibility determinations and it is certainly a reasonable determination that a claimant's long distance driving during the period he claims to have been disabled undercut his claims of debilitating back pain, dizziness, and fatigue.[5] *See e.g.*, *Bradley v. Colvin*, No. CV 13-1277, 2015 WL 46188, at * 8 (C.D. Cal. Jan. 2, 2015); *Abdur-Razzaaq v. Colvin*, No. 12 Civ. 7350, 2014 WL 1041786, at * 16-17 (S.D.N.Y. Mar. 18, 2014); *Twyford v. Commissioner*, No. 1:12 cv 796, 2013 WL 2102844, at * 12 (May 15, 2013); *Gilbertson v. Astrue*, No. 09-1824, 2010 WL 5690391, at * 21 (D. Minn. Sept. 20, 2010). Plaintiff's arguments that the ALJ failed to give appropriate consideration to his daily activities (Plf. Brief at 12-13, Page ID 414-15; Reply Brief at 3-5, Page ID 443-46) are unpersuasive. The ALJ gave appropriate consideration to plaintiff's daily activities and determined that they were not consistent with the level of functional restriction that plaintiff claimed in his hearing testimony. *See Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *see also Keeton v. Commissioner*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

---

[5]The ALJ gave plaintiff more than a benefit of a doubt when he suggested that the round trip distance from plaintiff's residence in Grand Rapids (Page ID 37, 81-82) to Dr. Aquino's office (Page ID 290) was about 180 miles. (Op. at 8, Page ID 67). Google maps indicates that the shortest round trip route between these points by car is 258 miles, with an estimated driving time of approximately two hours each way.

Plaintiff's criticism of the ALJ's opinion's for its failure to include a few sentences regarding the purported side effects of medication[6] is warranted. (Plf. Brief at 13, Page ID 415; Reply Brief at 5, Page ID 445). Plaintiff's attorney attempted to elicit testimony from plaintiff regarding side effects from his medications. Plaintiff did not identify any specific medication by name, but stated that if he had to take a "muscle relaxer," he would be "pretty much non-functional, as far as being able to get up and do things." (Page ID 107). Plaintiff testified that he took Valium for anxiety, but he described his anxiety rather than any side effects attributed to taking Valium. (*Id.*). Plaintiff's brief lists two medications as having the "common side effect[s]" of dizziness and drowsiness. (Plf. Brief at 12, Page ID 414). However, the significant deficiency in plaintiff's argument is the lack of supporting evidence in plaintiff's medical records. There is nothing in the medical records indicating that plaintiff complained of side effects from any medication, much less that he made persistent complaints of debilitating side effects which could not be remedied through resort to alternative medications.

Plaintiff's burden on appeal is much higher than pointing out minor imperfections in the ALJ's decision, He must demonstrate that the ALJ's factual finding regarding his credibility is not supported by substantial evidence. *See Ulman v. Commissioner*, 693 F.3d at 714. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401. I find that the ALJ's factual finding regarding plaintiff's credibility is supported by much more than substantial evidence and that it easily withstands scrutiny under the deferential substantial evidence standard of review.

---

[6]*See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Respectfully submitted,

Date: September 4, 2015 /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).